IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

ANNEMARIE N. GUERRERO,

        Debtor.

Case No. 15-26746-BEH

Chapter 13

**MEMORANDUM DECISION ON MOTION FOR RELIEF FROM
THE AUTOMATIC STAY AND CODEBTOR STAY**

Parties often enter into land contracts where vendor and vendee each face circumstances that make traditional mortgage financing unfeasible or unattractive. *See* Seong-hee Lee, Comment, *Installment Land Contracts in Purchaser Bankruptcy*, 29 EMORY BANKR. DEV. J. 425, 427–29 (2013). That is the case here, and ultimately the discrete financial circumstances affecting the vendor's current residence do not dictate whether she is entitled to relief from stay to pursue remedies against the debtor's residence.

On June 8, 2015, the debtor, Annemarie N. Guerrero, filed a petition for Chapter 13 bankruptcy. Creditor Sophia S. Bierman moved for relief from the automatic stay as to Guerrero, and from the codebtor stay as to Guerrero's non-filing spouse, Rafael Guerrero, pursuant to sections 362(d) and 1301(c) of the Bankruptcy Code. Bierman seeks relief from the stay to foreclose a lien on the debtor's principal residence. Guerrero has objected to Bierman's motion. After an evidentiary hearing and briefing, and for the reasons stated below, the motion for relief from the automatic stay and codebtor stay is denied.

## I. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered pursuant to 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), thus the Court may enter final judgment. 28 U.S.C. § 157(b)(1).

## II. FACTUAL BACKGROUND

On October 24, 2012, Bierman (then Sophia Salvia) entered into a land sale contract for the sale of real estate to Guerrero (then Annemarie Raney) and Guerrero's husband, Rafael Guerrero. *See* Land Contract, Creditor's Exhibit 1 filed on June 19, 2015, CM-ECF, Doc. No. 8-1. The subject property, which is located in Greendale, Wisconsin (the "Greendale property" or the "property"), is Guerrero's principal residence. Under the contract, Guerrero agreed to buy the Greendale property for $185,000, with $5,000 down. Guerrero was to pay off the remaining $180,000 in monthly installments of $3,314.97, at a 4% interest rate, starting on November 1, 2012. The contract called for a balloon payment of the entire outstanding balance on November 1, 2014. There was no evidence that the executed land contract was recorded.

Under the contract, Guerrero was entitled to possession of the Greendale property starting on November 1, 2012. CM-ECF, Doc. No. 8-1, at 3. She was contractually responsible for maintaining the property and for paying taxes, assessments, and insurance premiums (via her monthly payments to Bierman), as well as utilities. *Id.* at 1–2. The contract prohibited Guerrero from subjecting the property to any liens that could be superior to the lien created

by the contract, and from transferring any interest in the property without Bierman's consent. *Id.* at 2–3. Bierman, on the other hand, was required to convey the property to Guerrero via warranty deed upon completion of the purchase payments. *Id.* at 2.

It is undisputed that Guerrero did not make the final balloon payment due under the contract by November 1, 2014. The dispute focuses on the effect of that nonpayment. Bierman sought an order of strict foreclosure in state court; Guerrero counterclaimed for specific performance.

Before the state court action was resolved, Guerrero filed this case on June 8, 2015. Her schedules list Bierman as a secured creditor with a claim of $114,000 secured by the Greendale property. Guerrero proposes to pay off Bierman's claim over the life of her 60-month plan at a 5.5% interest rate, amounting to an overall payment of $124,212.28. Her plan also proposes to pay Bierman $2,500 monthly in adequate protection payments.

On June 19, 2015, Bierman filed her motion for relief from the automatic stay and codebtor stay. Guerrero objected.

Bierman alleges that cause exists to lift the stay as to Guerrero under 11 U.S.C. § 362(d), and as to Guerrero's non-filing spouse and codebtor Rafael Guerrero under 11 U.S.C. § 1301(c). Bierman asserts four grounds for relief. First, Bierman claims that she lacks adequate protection under section 362(d)(1) because, if Guerrero is allowed to spread the balloon payment over the five-year plan, Bierman will be unable to pay off a second mortgage on her *own* home, which will then be subject to foreclosure. *See* CM-ECF, Doc. No.

19.[1]  Second, she claims that "cause" exists for relief from the stay under section 362(d)(1) because Guerrero cannot "pick and choose which of the land contract terms to adhere to in her plan."  This argument assumes that the land contract is an "executory contract" within the meaning of section 365 of the Bankruptcy Code.  Third, Bierman claims that relief is appropriate under section 362(d)(2) because, she asserts, Guerrero has no equity in the property.  Fourth, she claims that the continuation of the codebtor stay under section 1301 as to Rafael Guerrero would irreparably harm her interests.  Bierman also claims that the amount Guerrero owes on the land contract is $128,714.33, but Bierman has yet to file a proof of claim.

Guerrero argues that Bierman is adequately protected by a higher-than-contract interest rate and by equity in the property.  Guerrero also argues that the land contract at issue is analogous to a mortgage, which she has a right to cure.  *See* CM-ECF, Doc. Nos. 12, 20.

The court held an evidentiary hearing on July 29, 2015.  In support of her motion, Bierman offered her own testimony and called two additional witnesses: Rafael Guerrero and her husband, Jeffrey Bierman.  She also moved three exhibits into evidence, including the parties' land contract.  Guerrero offered only her own testimony.

---

[1] In her initial motion, Bierman claimed that she was entitled to relief under section 362(d)(1) because "movant does not have adequate protection for her interest in the land contract, insofar as final and full balloon payment of approximately $128,785.80 was due and payable no later than November 1, 2014, and thusly has commenced litigation to strictly foreclose the interest of the debtor and debtor's non-filing spouse in such property; with payments made and accumulations of interest, debtor would be able to redeem the property only if they [*sic*] paid $128,714.33 if strict foreclosure is ordered."  CM-ECF, Doc. No. 8, at 2.

Much of the evidence Bierman presented focused on the state court eviction and foreclosure proceedings and her own financial condition. Both Bierman and her husband testified that their own home in Hartland, Wisconsin, is in danger of foreclosure because the bank has called in a $75,000 second mortgage that Mr. Bierman and his ex-wife took out on the home. Bierman also testified that she wants to obtain possession of the Greendale property so that she can move there if her Hartland home is foreclosed upon.

Notably, neither party presented any admissible evidence of the current value of the Greendale property, even though the value of secured collateral is generally a central issue in motions for relief from stay. *See e.g., In re M.C. Pipe, Inc.*, No. 11-05256-8-JRL, 2011 WL 5902604, at *2 (Bankr. E.D.N.C. Oct. 7, 2011) ("Establishing the value of collateral is essential to a determination of whether a creditor is entitled to relief pursuant to § 362(d)(1) and (2)."). The only valuation evidence proffered by the parties was the lay opinion of Guerrero, who opined that the property was worth between $185,000 and $200,000 based on her knowledge of the sale price of comparable homes in her neighborhood. Despite the lack of objection by Bierman, the court will not consider this testimony in the present analysis because it is based on inadmissible hearsay.[2]

---

[2] Although Guerrero—as the equitable owner of the property—may be competent to offer a lay opinion as to its value, she is not qualified as an expert and may not testify as to the type of information that an appraiser would normally rely on in determining value. *See* Fed. R. Evid. 701, 702. *See also* BARRY RUSSELL, BANKR. EVID. MANUAL, § 701:2 (2014 ed.).

The record contains only two other items that bear on the value of the Greendale property. First, Exhibit 1, the land contract, lists the original 2012 purchase price of the property as $185,000. Second, Guerrero's schedules list the value of the property as $220,000.[3] The court gives little weight to the latter valuation because Guerrero presented no evidence to explain how she arrived at that amount.[4] Given the scant evidence in the record, the court concludes that the best evidence of the value of the property is the purchase price listed in the land contract. And, although Bierman testified that Guerrero removed approximately $20,000 to $25,000 worth of trees from the property at some point after she took possession, the court finds this testimony insufficient to establish any significant decline in the value of the property. Because neither party demonstrated that the current value of the property is any less or any more than the price Bierman sold it for in October 2012, the court concludes that the value of the Greendale property, for purposes of this motion, is $185,000.

---

[3] The court may take judicial notice of schedules filed on its docket. *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002). By doing so, the court does not infer the truthfulness of the information contained therein; judicial notice is not a substitute for admissible evidence. *E.g.*, *Greene v. East Coast Mktg., Inc.* (*In re Greene*), No. 06-33611KHN, Adv. Nos. 07-03004KRH, 07-03018KRH, 2007 WL 1309047, at *7 n.11 (Bankr. E.D. Va. May 3, 2007) ("While the Court can take judicial notice of the schedules filed in this case, such notice does not thereby render the information set forth therein admissible.").

[4] *See In re Meeks*, 349 B.R. 19, 22 (Bankr. E.D. Cal. 2006) ("When the owner of property is unable to provide a detailed explanation of how he or she arrived at a value for the property, the testimony may be insufficient to establish in the court's mind an 'actual belief . . . derived from the evidence' as to the validity of the owner's opinion.") (quoting *In re Brown*, 244 B.R. 603, 612 (Bankr. W.D. Va. 2000)).

### III.  DISCUSSION

Before the court can determine whether Bierman is entitled to relief from the stay, it must resolve a preliminary legal issue: whether the land contract at issue is an "executory contract" or a security agreement under the Bankruptcy Code. If the contract is "executory," it is subject to section 365(a), and the trustee must assume or reject the contract in its entirety. If the contract is a security agreement, Bierman has a secured claim and her rights are governed by the Code provisions applicable to secured creditors. The nature of the land contract under the Code will dictate the parties' rights and property interests in this case, as well the relief that Bierman may obtain.

**A.    The Land Contract is a Security Agreement and Not an Executory Contract Under the Code.**

The Bankruptcy Code does not expressly define the term "executory contract." Most courts, including the Seventh Circuit, have adopted the so-called "Countryman" definition, which provides that an executory contract is one in which "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *In re Streets & Beard Farm P'ship*, 882 F.2d 233, 235 (7th Cir. 1989) (quoting V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973)). The legislative history of section 365 echoes this understanding of an executory contract. *See* S. REP. NO. 95-989, at 58 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5844 ("Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance

remains due to some extent on both sides."). In determining whether the parties' remaining contractual obligations are significant enough to render a contract executory, courts look to relevant state law. *Streets & Beard*, 882 F.2d at 235.

In *Streets & Beard*, the Seventh Circuit ruled that under Illinois law an installment land contract was a security agreement rather than an executory contract within the meaning of section 365. *Id.* Applying the Illinois doctrine of equitable conversion, the court reasoned that the debtor/purchaser became the equitable owner of the property upon entering into the contract. The debtor was entitled to immediate possession of the property and was obligated to pay all relevant taxes and costs, while the seller's only remaining obligation was to deliver legal title upon the completion of payment. *Id.* The court found the seller's obligation insufficient to render the contract executory under the Bankruptcy Code, explaining: "In our view, the delivery of a legal title is a mere formality and does not represent the kind of significant legal obligation that would render the contract executory." *Id.* Rather, the land contract was "merely a security agreement where the vendor h[eld] legal title in trust solely as security for the payment of the purchase price." *Id.*

The Wisconsin doctrine of equitable conversion is similar to the Illinois doctrine at issue in *Streets & Beard*. Upon entering into a land contract, the purchaser becomes the equitable owner of the property, while the seller holds the legal title in trust as security for payment of the purchase price. *See Kallenbach v. Lake Publications, Inc.*, 30 Wis. 2d 647, 651, 142 N.W.2d 212,

214 (1966); *Mueller v. Novelty Dye Works*, 273 Wis. 501, 505, 78 N.W.2d 881, 883 (1956). Indeed, "[t]he law of Wisconsin is quite clear as to the status of land contracts: they are security devices under which the vendee is the owner unless and until the vendee's interest is foreclosed. They are thus analogous to purchase money mortgages for nearly all purposes." *In re Patch Graphics*, 32 B.R. 373, 374 (Bankr. W.D. Wis. 1983).

The *Patch Graphics* court looked to other courts to explain, "the principal guide to decision [is] essentially instrumental, that is, the extent to which conceiving the transaction as a lien or a contract would aid the bankruptcy policy of equality among creditors: '[t]he contract for deed, where debtor is vendee, benefits the estate more when viewed as a lien than as an executory contract.' . . . [T]reating the contract as a lien results in the enlargement of the debtor's estate, makes adequate protection available to creditors and favors rehabilitation." 32 B.R. at 374–75 (citing *In re Booth*, 19 B.R. 53, 58–60 (Bankr. D. Utah 1982)).

Bierman cites *N.L.R.B. v. Bildisco*, 465 U.S. 513 (1984) in support of her argument that the land contract is executory. But *Bildisco* sheds no light here, because in that case the parties did not dispute that an unexpired collective-bargaining agreement was an executory contract. 465 U.S. at 521–22. For the same reason, Bierman's cite to *In re McLean Indus., Inc.*, 132 B.R. 247 (Bankr. S.D.N.Y. 1991) does not help the court determine the nature of a land contract under Wisconsin law. *See id.* at 265 (accepting that debtor assumed an executory contract, but ruling that the benefits-and-burdens analysis does not

require that every provision of such an agreement is enforceable by or against the debtor).

Applying the above relevant principles to this case, the court concludes that the land contract is not executory within the meaning of section 365. Under the Wisconsin doctrine of equitable conversion, Guerrero is the equitable owner of the property, while Bierman retains a lien on the property similar to a mortgagee's interest. The terms of the contract itself support this conclusion. The agreement grants Guerrero all the rights and responsibilities of an owner: she is entitled to possession of the property; is responsible for maintaining the property; and is obliged to pay property taxes, assessments, insurance, and utilities. The sole contractual limitation to her control of the property is a provision prohibiting her from transferring any property interests or leasing the premises without Bierman's approval. In contrast, Bierman's only obligation under the contract is to deliver the deed upon full payment of the purchase price. Under *Streets & Beard*, this remaining obligation does not render the land contract executory. The court therefore concludes that the land contract is a security device granting Bierman a lien on the property as security for the unpaid purchase price, and is not an executory contract under section 365.

Having determined that the land contract at issue is a security device, the court must now turn to Bierman's motion for relief from the automatic stay.

**B.     Bierman is Not Entitled to Stay Relief Under Section 362(d).**

Section 362(d) of the Code allows a party in interest to request relief from the automatic stay. It provides that the court "shall" grant relief from the stay:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d). "Cause" under section 362(d)(1) "has no clear definition and is determined on a case-by-case basis." *Int'l Bus. Machs. v. Fernstrom Storage and Van Co.* (*In re Fernstrom Storage and Van Co.*), 938 F.2d 731, 735 (7th Cir. 1991).

The party requesting relief from the stay bears the burden of proof on the debtor's equity in the property. 11 U.S.C. § 362(g)(1). The party opposing such relief has the burden of proof on all other issues. 11 U.S.C. § 362(g)(2). "Courts have interpreted section 362(g)(2) to mean the movant must first establish a prima facie case, which then must be rebutted by the debtor if relief from stay is to be avoided." *In re Spencer*, 531 B.R. 208, 212 (Bankr. W.D. Wis. 2015).

**1.     Bierman is adequately protected under section 362(d)(1).**

Bierman seeks relief from the stay under section 362(d)(1) on the ground that she lacks adequate protection. Although the Bankruptcy Code does not define "adequate protection," it does provide three non-exhaustive examples of how a debtor may provide adequate protection to a secured creditor:

(1) periodic cash payments equivalent to the decrease in value of the creditor's interest in the collateral; (2) an additional or replacement lien on other property to compensate for the decrease in value of the creditor's interest in the collateral; and (3) other relief that provides the "indubitable equivalent" of the creditor's interest in the collateral. 11 U.S.C. § 361. As these examples illustrate—and as bankruptcy courts have held—the purpose of adequate protection is to "assure that a secured creditor, during the pendency of a bankruptcy case, does not suffer a loss in the value of its interest in the property of the bankruptcy estate, rather than to compensate the creditor for the delay imposed by the bankruptcy in its ability to pursue nonbankruptcy remedies (like foreclosure) against the property." *In re Markos Gurnee P'ship,* 252 B.R. 712, 716 (Bankr. N.D. Ill. 1997) (citing *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365 (1988)); *see also In re Spencer,* 531 B.R. at 214.[5]

To prevail on her claim for lack of adequate protection under section 362(d)(1), Bierman must demonstrate, at a minimum, that the value of the Greendale property is declining. *In re Settlers' Hous. Serv., Inc.,* 505 B.R. 483, 495–96 (Bankr. N.D. Ill. 2014). Only if Bierman makes this initial showing is Guerrero required to prove that adequate protection exists. *Id.* Here, Bierman

---

[5] Because adequate protection concerns the creditor's *interest* in the collateral—*i.e.,* the creditor's property lien, not the entire value of the collateral itself—adequate protection may be provided in the form of an "equity cushion" (the excess value of the collateral over the secured claim) when a creditor is oversecured. *See In re Aaura, Inc.,* No. 06 B 01853, 2006 WL 2568048, at *2 (Bankr. N.D. Ill. Sept. 1, 2006); *In re Senior Care Properties, Inc.,* 137 B.R. 527, 529 (Bankr. N.D. Fla. 1992). As noted in section B.3, Bierman is oversecured because the value of the Greendale property exceeds her alleged lien.

has not met her initial burden. She offered no evidence to establish the value of the property itself, let alone that the value is declining. Nor did she demonstrate that her interest in the property is threatened by other circumstances, such as a failure by Guerrero to pay property taxes,[6] or to insure or maintain the property. The sole basis for Bierman's claim is that her own home will be subject to foreclosure if Guerrero is allowed to spread out the balloon payment over five years. While such ancillary circumstances are unfortunate, they do not constitute a lack of adequate protection. Bierman must show an impairment in the value of *Guerrero's* residence—not her own. Because Bierman has failed to do so, the court finds that she is not entitled to relief from the automatic stay for lack of adequate protection. Even if Bierman had shown an impairment, Guerrero's plan provides adequate protection in the form of pre-confirmation payments of $2,500, as well as a 5.5% interest rate on plan payments on Bierman's secured claim.

### 2. Bierman has not established any other "cause" for relief under section 362(d)(1).

Bierman also suggests that two other circumstances establish "cause" to lift the stay, essentially arguing that Guerrero's proposed treatment of her claim is a prohibited modification rather than a permissive cure.

---

[6] Although Bierman testified that the property is currently subject to a $35,000 tax delinquency claim, she conceded that she is responsible for this delinquency: Bierman failed to apply a portion of Guerrero's monthly payments toward the property taxes as required by the contract, and admitted that she instead used the money for other purposes. Guerrero testified that she is willing and able to bring the taxes on the property current within 30 days, apparently based on the improving performance of her business and loans from relatives.

First, Bierman claims that Guerrero's "attempt to pick and choose which of the land contract terms to adhere to in her plan" constitutes cause, because Guerrero cannot modify the terms of the land contract which is executory and must be assumed or rejected in its entirety. Bierman provides no legal support for this interpretation of "cause." And, in any event, the court has already concluded that the land contract is not executory within the meaning of the Code.

Second, Bierman implies, but does not explicitly argue, that "cause" exists to lift the stay because 11 U.S.C. § 1322(b)(2) prohibits Guerrero from modifying the terms of the land contract through her plan.[7] *See* CM-ECF, Doc. No. 19, at 4–5 (citing *In re Cooper,* 98 B.R. 294 (Bankr. W.D. Mich. 1989); *In re Sennhenn*, 80 B.R. 89 (Bankr. N.D. Ohio 1987) *aff'd*, 80 B.R. 93 (N.D. Ohio 1987); and *In re Seidel*, 752 F.2d 1382 (9th Cir. 1985)). This argument is not persuasive. The authorities on which Bierman relies predate the Bankruptcy Reform Act of 1994, which revised the Code to include section 1322(c)(2).[8] That newer provision allows a debtor to cure a mortgage debt that matured before or during a bankruptcy by making full payment of the debt over the life

---

[7] 11 U.S.C. § 1322(b)(2) provides: "Subject to subsections (a) and (c) of this section, the plan may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."

[8] 11 U.S.C. § 1322(c)(2) provides: "Notwithstanding subsection (b)(2) and applicable non-bankruptcy law . . . in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title." Neither party's brief expressly addresses this subsection. Arguing a right to cure, Guerrero cites to Wis. Stat. Ch. 708, instead of looking to section 1322(c)(2).

of the Chapter 13 Plan—and thus implicitly overrules, or is an exception to, the cases that Bierman cites. *See, e.g.*, *In re Keita*, No. 12-19970PM, 2012 WL 6195109, at *3 (Bankr. D. Md. Dec. 12, 2012) ("Following 1994, the pendulum swung, with courts ruling that mortgage notes fully matured prior to a debtor's bankruptcy filing may be paid within the purview of § 1322(c)(2).") (citing cases); *In re Jones*, 188 B.R. 281, 284 (Bankr. D. Or. 1995) ("This court concludes that the *Seidel* holding has been overruled by the language of § 1322(c)(2).").

Bierman asserts that "no bankruptcy opinion has ever permitted a land contract buyer to extend a balloon payment due pre-petition." But a Kansas court, in an unpublished decision, cleared the way for just that. *See In re Lewis*, No. 03-12393, 2004 WL 2192423, at *3 (Bankr. D. Kan. Mar. 24, 2004) (denying motion for stay relief because debtor's plan appropriately provided for payment of a land contract "balloon" payment, which was due prepetition, over the life of the plan). And while § 1322(c)(2) may not be "a model of clarity" with respect to short-term mortgages that ballooned prepetition, a number of courts have found § 1322(c)(2) directly applicable to circumstances similar to those here. *See* KEITH M. LUNDIN & WILLIAM H. BROWN, CHAPTER 13 BANKRUPTCY, 4TH ED., § 143.1 at ¶ 8, n.13 (2004) (citing *In re Ibarra*, 235 B.R. 204, 211 (Bankr. D.P.R. 1999) (concluding that section 1322(c)(2) allowed the debtor to pay off a mortgage note that matured prepetition over the life of the Chapter 13 plan); *In re Chang*, 185 B.R. 50, 53 (Bankr. N.D. Ill. 1995) (same); *In re Sarkese*, 189 B.R. 531, 535 (Bankr. M.D. Fla. 1995) (same)).

For the reasons stated above, the court concludes that Bierman has not shown "cause" to lift the stay under section 362(d)(1).

### 3. Bierman has not proven that Guerrero lacks equity under section 362(d)(2).

A creditor may obtain relief from the stay under section 362(d)(2) if the debtor does not have any equity in the property *and* if the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Bierman bears the burden of proving that Guerrero lacks equity in the property. 11 U.S.C. § 362(g)(1).

Bierman attempts to meet her burden by pointing out that she holds *legal* title to the property. While this is true, it does not follow—as Bierman claims—that Guerrero "has no equity in the property until the land contract is completed." Bierman cites *Steiner v. Wisconsin Am. Mut. Ins. Co.*, 2005 WI 72, 281 Wis. 2d 395, 697 N.W.2d 452, in her discussion of the remedies available to a land contract vendee, but *Steiner* does not support her argument that the vendee has no meaningful title. The land contract is a security device, under which Guerrero is the "owner" of the real property (and Bierman is the "owner" of the right to the purchase price). *See, e.g.*, *Mueller*, 273 Wis. at 507 ("From the date of the contract [the seller] had only a security title to the real estate equivalent to a mortgagee's interest, which was in the nature of personal property."). Like a typical mortgagor, Guerrero has equity in the property to the extent that the value of the property exceeds the liens against it. *See, e.g., Cardinal v. United States*, 26 F.3d 48, 49 (6th Cir. 1994) (measuring land

contract vendee's "equity interest" in property by reducing the fair market value of the property by the amount due on the contract plus any other liens).

Bierman has failed to carry her burden under section 362(d)(2)(A). Bierman says this provision prevents Guerrero from having an equitable interest until the land contract is fulfilled. But for purposes of this motion, the court has already determined that the value of the property at issue is $185,000. Assuming that the liens against the property total $128,714.33, Guerrero has equity in the property, and Bierman is oversecured.[9]

## C. Bierman is not Entitled to Stay Relief Under Section 1301(c).

The filing of a Chapter 13 case acts as an automatic stay prohibiting a creditor from trying to collect against a debtor's non-filing codebtor. 11 U.S.C. § 1301(a). A creditor can move for relief from this stay, and the court must grant such relief to the extent that the creditor's interest would be "irreparably harmed by continuation of such stay." 11 U.S.C. § 1301(c)(3).

The legislative history of section 1301(c)(3) provides several examples of when irreparable harm may exist, such as "where the codebtor is deteriorating financially, by loss of his job, or where the codebtor is about to leave the jurisdiction, and would no longer be available to make good on the debt if the debtor were unable to complete payments under the plan." H.R. REP. NO. 95-

---

[9] Although Bierman testified that the property is subject to a $35,000 tax lien, she provided no corroborating evidence of this lien, and Bierman bears the burden of proving Guerrero's lack of equity in the property. Moreover, Bierman acknowledged that the tax lien arose from her own failure to make tax payments.

*Even assuming* the property is subject to such a lien—and that the lien would not affect the amount of Bierman's alleged secured claim of $128,714.33—the court's conclusion would be the same, because the value of the property is greater than both liens combined.

595, at 122 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6083. These examples indicate that irreparable harm may occur in circumstances where a creditor will lose its ability to collect against the codebtor if immediate action is not taken. *See In re Williams*, 374 B.R. 713, 715 (Bankr. W.D. Mo. 2007) ("[T]he creditor must demonstrate that some event occurred or is likely to occur that will impair its ability to recover from the co-debtor and that immediate action is necessary to prevent this harm.").

Bierman has presented no evidence that such circumstances exist here. The thrust of her argument is that she will suffer irreparable harm if Guerrero is allowed to spread the balloon payment, which was due in November 2014, over a five-year period. Courts have consistently held that mere delay of payment is not irreparable harm. *See id*; *Harris v. Ft. Oglethorpe State Bank*, 721 F.2d 1052, 1054 (6th Cir. 1983). Because Bierman alleges only that she will suffer a delay in collecting payment from the Guerreros, she has failed to meet her burden of proof under section 1301(c)(3).[10]

## IV. CONCLUSION

For the foregoing reasons, the court concludes that Bierman is not entitled to relief from the automatic stay under section 362(d) or relief from the codebtor stay under section 1301(c). This decision constitutes the court's

---

[10] Bierman elicited some testimony from Rafael Guerrero concerning statements of omission made in his own prior bankruptcy case, in an effort to undermine his credibility. Even assuming Mr. Guerrero's credibility has been impaired, that finding on its own does not establish irreparable harm under section 1301(c)(3).

findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. A separate order consistent with this decision will be entered.

Dated: September 1, 2015

Beth E. Hanan
United States Bankruptcy Judge